**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHARIF SHANAHAN, | ) | |
| *Plaintiff*, | ) | |
| v. | ) | No. 26 C 5469 |
| NORTHWESTERN UNIVERSITY, KATHARINE BREEN, CHRIS ABANI, NATASHA TRETHEWEY and JUAN MARTINEZ, | ) | Chief Judge Virginia M. Kendall |
| *Defendant*. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Charif Shanahan ("Shanahan") filed this four-count lawsuit on May 12, 2026. (Dkt. 1). Shanahan brings a Race Discrimination claim under 42 U.S.C. § 1981 (Count I), a Retaliation claim under 42 U.S.C. § 1981 (Count II), and a Breach of Contract claim (Count IV) against Northwestern University ("Northwestern"). (*Id.*) Shanahan also filed a defamation per se claim under Illinois common law against Katharine Breen ("Breen"), Chris Abani ("Abani"), Natasha Trethewey ("Trethewey"), and Juan Martinez ("Martinez"). (*Id.*) Northwestern, Breen, Abani, Trethewey, and Martinez have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on Counts III and IV. (Dkt. 8). For the following reasons, the Court grants in part and denies in part the Defendants' motion to dismiss. [8].

## **BACKGROUND**[1]

Shanahan began working at Northwestern on September 1, 2020, as a member of the Department of English's teaching-track faculty. (Dkt. 1, ¶ 32). Shanahan worked as an Assistant Professor of English and Creative Writing in the Department of English and the Litowitz MFA + MA Graduate Creative Writing Program. (*Id.* ¶ 29-30). Breen, Abani, Trethewey, and Martinez, also Northwestern employees, worked as Shanahan's superiors. (*Id.* ¶ 31). Breen was the English Department Chair. (*Id.* ¶ 45). Abani was the Director of Creative Writing. (*Id.* ¶ 44). Trethewey was a senior faculty member in the Graduate Creative Writing Program. (*Id.* ¶ 13). Martinez was the Director of Undergraduate Studies. (*Id.* ¶ 84).

The following documents governed Shanahan's employment, alongside his fellow Northwestern professors, including his superiors: the Northwestern University Faculty Handbook, the Weinberg College Chairperson's Handbook: Procedures and Practices, the Litowitz MFA + MA Guide to Graduate Study, and the Guidelines for Handling Appeals Made to the University Faculty Appeals Panel. (*Id.* ¶ 227). Shanahan and his colleagues had to comply with these binding guidelines. (*Id.* ¶ 228). The guidelines also included procedural and substantive protections for the professors at Northwestern. (*Id.*)

For the 2021-2022 academic year, Northwestern promoted Shanahan to the tenure track and during the 2024-2025 academic year, Shanahan officially applied for tenure. (*Id.* ¶ 36, 69). To obtain tenure, Northwestern required professors go through a formal review process; the tenure candidate's department voted first, an Ad Hoc Committee created by the Dean reviewed the department's vote, a University-wide Committee on Tenure and Promotion next viewed the tenure

---

[1] The Court takes all facts alleged in the Complaint as true for the purpose of this motion. *See Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 627 (7th Cir. 2022).

candidate's file, and the Board of Trustees had the final say. (*Id.* ¶ 70). During the tenure process, the Chairperson's Handbook required individuals with a contentious relationship with the tenure candidate to remove themselves from the vote. (*Id.* ¶ 223). Shanahan invoked this provision to remove Breen, Abani, and Trethewey from voting for or against his tenure, as he had filed discrimination and retaliation complaints that involved them. (*Id.* ¶ 235). The Dean's Office denied Shanahan's request and allowed all three members to vote. (*Id.*)

Shanahan's department unanimously voted against his recommendation for tenure. (*Id.* ¶ 72). Breen, a member of his department, sent a seven-page letter to Dean Randolph that outlined the department's deliberations. The letter included the following allegations about Shanahan's teaching and professional conduct: (1) graduate students reported Shanahan told them he "regretted their admission" and the students "did not belong" in the program, (2) students asked for a new advisor for their honors thesis on three separate occasions as the students did not work productively with Shanahan, (3) Shanahan had advocated for the firing of another faculty member who did not agree with him on a "contentious issue," (4) Shanahan intentionally breached the hiring committees confidentiality, and (5) Shanahan's teaching caused two students to stay in his course. (*Id.* ¶¶ 80-90, 194).

The department then "published" the letter to Dean Randolph, the Provost, the Ad Hoc Committee, the Committee on Tenure and Promotion, and the Board of Trustees. (*Id.* ¶ 162). The letter included a disclaimer that "'any one of these events could have been misreported or susceptible to an alternative explanation.'" (*Id.* ¶ 92). The Ad Hoc committee, which reviewed Shanahan's file, upheld the recommendation against tenure on June 7, 2025. (*Id.* ¶ 109). On April 25, 2025, Northwestern officially denied Shanahan's application for tenure. (*Id.* ¶ 114). Shanahan, in response to his tenure denial, submitted a letter and an addendum addressing the department's

evaluation, including breaches committed on behalf of the University and his superiors throughout his hiring process. (*Id.* ¶¶ 135-136). Shanahan also denied the truth of the statements in the letter and believed Northwestern did not properly investigate these allegations before relying on them during committee deliberations. (*Id.* ¶ 163).

As a result of Shanahan's tenure process, Shanahan brought this lawsuit against the Defendants. Shanahan filed a defamation per se claim against Northwestern, Breen, Martinez, Trethewey, and Albani (Count III). He also brought a breach of contract claim against Northwestern (Count IV). The Defendants now seek to dismiss these counts for failure to state a claim.

**LEGAL STANDARD**

"To survive a Federal Rule of Civil Procedure Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *G.T. by & through Hanlon v. Samsung Elecs. Am., Inc.*, 186 F.4th 470, 474 (7th Cir. 2026) (quoting *Bell Alt. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausible on its face when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 881 (7th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To determine the plausibility of a plaintiff's claim, "the court may consider 'documents . . . attached to the complaint, documents . . . central to the complaint and . . . referred to in it, and information that is properly subject to judicial notice.'" *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 n. 2 (7th Cir. 2017) (quoting *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013)). For purposes of a Rule 12(b)(6) motion, the Court accepts all well-plead facts as true and draws all inferences in favor of the non-moving party. *Id.* The bar to survive a motion to

dismiss is not high, as "dismissal is proper only if it is clear that no relief could be granted under any set of facts that could be proved consist with the allegations." *Id.* (cleaned up).

## DISCUSSION

### I. Count III: Defamation Per Se Under Illinois Common Law[2]

Shanahan brings a defamation per se claim against the Defendants. To plead a claim for defamation under Illinois law, a plaintiff must allege that "'the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages.'" *Trahanas v. Nw. Univ.*, 64 F.4th 842, 858 (7th Cir. 2023) (quoting *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1129 (7th Cir. 2022)). Illinois law considers statements defamation per se if the statement's "'defamatory character is obvious and apparent on its face.'" *Id.* (quoting *Bd. of Forensic Document Exam'rs, Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 831-32 (7th Cir. 2019)).

Shanahan alleges the following comments in the October 24, 2024, letter constitute false statements of fact: (1) Shanahan told students they did not belong in a graduate program and he regretted their admission, (2) students asked for a new advisor since they did not work productively with Shanahan, (3) Shanahan advocated for the firing of another faculty member who did not agree with him, (4) Shanahan intentionally breached confidentiality in a hiring committee assignment, and (5) Shanahan's actions caused two students to remain in one of his courses. (Dkt. 1, ¶¶ 169-194). According to Shanahan, Breen, Albani, Trethewey and/or Martinez made these statements since no other individuals in the department would have had knowledge about these alleged reports. (*Id.* ¶ 93).

---

[2] The Defendants did not move to dismiss Shanahan's alternative defamation by implication claim in their motion to dismiss. The Court therefore does not address this issue.

Illinois law recognizes five statements as defamatory per se, but only two remain relevant for this case: (1) those ascribing an inability to perform or an absence of integrity in one's employment, and (2) those that indicate an individual cannot adequately perform in his employment or prejudice one in his profession, trade, or business. *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1129 (7th Cir. 2022). Defamatory per se statements under these categories require the defendants accuse a plaintiff of "lacking *ability in his trade* or doing something bad *in the course of carrying out his job*." *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005). Even if a statement falls within a defamation per se category, a plaintiff cannot prevail if the statement has a reasonable, innocent construction. Here, the Defendants argue, even if the Court presumes Shanahan has alleged defamatory statements, he cannot succeed on a defamatory per se claim because the statements fall within the innocent construction rule. (Dkt. 9 at 7-8). The Court agrees.

The innocent construction rule applies when a defamatory statement has a reasonable, innocent interpretation. *Rao v. J.P. Morgan Chase Bank, N.A.*, 153 F.4th 541, 551 (7th Cir. 2025). To determine if the innocent construction rule applies, courts asks whether the words, when considering the context in which one used them, have an innocent interpretation. *D'Ambrosio v. Meta Platforms Inc.*, 176 F.4th 928, 942 (7th Cir. 2026). If a single innocent construction exists for a statement, it will prevail over a defamatory one. *Rao*, 153 F.4th at 551. This "rigorous standard" favors defendants in defamation per se actions. *Otto v. Chicago Pub. Media*, *Inc.*, No. 1-22-1246, 2023 WL 5202903, at *3 (Ill. App. Ct. Aug. 11, 2023).

The statements included in the letter are subject to an innocent interpretation. Following a two-day deliberation in the department, Breen compiled the comments made regarding Shanahan's tenure and delivered them in a letter to the Dean as part of the University's tenure process. (Dkt. 1

¶ 74). The letter included a discussion of Shanahan's "exceptional scholarly record[,]" and the alleged defamatory statements. (*Id.* ¶ 73). The statements in the letter came from department members and alleged student complaints. (*Id.* ¶ 164). Because the comments did not all come from first-hand reports, the letter *expressly* stated that "any one of these events could have been misreported or susceptible to an alternative explanation." (*Id.* ¶ 199). This informed the Dean and subsequent reviewers that the allegations may have reasonable, alternative explanations. *Bryson v. News Am. Publications, Inc.*, 672 N.E.2d 1207, 1217 (1996) ("Courts must [] interpret the allegedly defamatory words as they appeared to have been used and according to the idea they were intended to convey to the reasonable reader.").

The Defendants argue the statements in the letter are innocent because they reflected the concerns raised by other professors on whether Shanahan satisfied Northwestern's "high standards" required for tenure. (Dkt. 9 at 9). They contend the letter does not reflect on Shanahan's ability to perform, indicate a lack of integrity in his employment duties, or prejudice him in his profession, but instead, speak to his credentials for tenure, a highly sought after position at a prestigious university. The context of the October 24, 2024, letter is critical to the Court's analysis. The letter conveys comments regarding Shanahan's qualifications to become a tenured professor. This innocent construction prevails over Shanahan's defamatory one. *See e.g., Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 413, 667 N.E.2d 1296, 1302 (1996) (finding innocent construction behind comments that an individual did not follow up on assignments and did not get along with co-workers as they may have indicated she did not fit within her current organization and failed in that setting); *Antonacci v. Seyfarth Shaw, LLP*, 2015 IL App (1st) 142372, ¶ 30, 39 N.E.3d 225, 237 (holding innocent construction applies to statements in an email since, when reading email as a whole, the alleged defamatory statements were confined to the context of defendant's

relationship with plaintiff and the audience was limited to human resource personnel); *Green v. Trinity Int'l Univ.*, 344 Ill. App. 3d 1079, 1094, 801 N.E.2d 1208, 1220 (2003) (statements that "students had made complaints over the years and had discussed them with plaintiff without satisfactory resolution" do not necessarily imply an individual lacked skill or qualifications in his employment, but "[r]ather, they could reasonably be construed to mean that plaintiff did not fit in with the University or that his philosophies did not mesh with those of the University.").

Because the statements in the letter are susceptible to at least one innocent construction, the Court does not need to consider whether they defamed Shanahan. *Huon v. Denton*, 841 F.3d 733, 736 (7th Cir. 2016). The Court dismisses Shanahan's defamation per se claim without prejudice.[3] *Id.* at 739 (upholding district court's granting of a motion to dismiss for failure to state a claim for defamation per se as the alleged defamatory statement had an innocent construction).

## II. Count IV: Breach of Contract

Shanahan also brought a breach of contract claim against Northwestern. To state a claim for a breach of contract under Illinois law, a plaintiff must plead: "(1) the contract existed, (2) the plaintiff performed the conditions precedent required by the contract, (3) the defendant breached the contract, and (4) damages." *Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 861 (7th Cir. 2020) (citing *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 626 (7th Cir. 2013)). Here, Northwestern argues Shanahan failed to sufficiently plead a breach of contract claim because he did not plausibly allege the existence of a contract or that a breach of one took place. (Dkt. 8 at 11). Neither argument is availing.

First, Shanahan provided enough facts at the motion to dismiss stage to show the plausible existence of a contract. Shanahan alleges the contract breached consisted of his letters of

[3] The Defendants did not move to dismiss Shanahan's alternative defamation by implication claim in their motion to dismiss. The Court therefore does not address this issue.

appointment, the Northwestern University Faculty Handbook, the Weinberg College Chariperson's Handbook: Procedures and Practices, the Litowitz MFA + MA Guide to Graduate Study, and the Guidelines for Handling Appeals Made to the University Faculty Appeals Panel. (Dkt. 1, ¶ 227). Under Illinois law, an employee handbook or policy statement can create an enforceable contract. *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (1987); *see also Lee v. Cnty. of Cook*, 862 F.2d 139, 142 (7th Cir. 1988).

First, the language of the handbook must include a "promise clear enough that an employee would reasonably believe that an offer has been made." *Id.* Second, the employee must have knowledge of the content of the employee handbook and believe it stands as an offer. *Id.* Third, the employee must commence or continue work after obtaining knowledge of the policies. *Id.* Unless the handbook has expressly disclaimed the creation of contractual obligations, it can create an enforceable contract. *Garcia v. Kankakee Cnty. Hous. Auth.*, 279 F.3d 532, 536 (7th Cir. 2002) (holding no contract exists when a handbook had the following disclaimer; "[t]he following policies and procedures state current policy and are not themselves to be considered or interpreted as terms of an implied or express contract. The Authority reserves the right to amend, modify and/or revoke any of its policies, practices, procedures and standards summarized in this handbook.").

Shanahan alleged sufficient facts to establish the plausible existence of a contract. First, Shanahan has included enough facts to show these handbooks had "positive and mandatory language[,]" indicating he believed an offer had been made. *Doe v. First Nat. Bank of Chicago*, 865 F.2d 864, 872 (7th Cir. 1989) (recognizing "an employee handbook or similar document creates enforceable contractual rights only when specific procedures have been prescribed by positive and mandatory language.") (Dkt. 1., ¶¶ 233-264). For example, the Chairperson's

Handbook requires the chair or a designated senior colleague of a department that "receives complaints from students about a faculty member's teaching, advising, or collegiality . . . [to] look into the accuracy of such complaints and work with the faculty member to resolve any issues and improve performance." (*Id.* ¶ 236). Second, Shanahan alleged he had knowledge of the handbooks and believed they stood as an offer; "Northwestern published these documents to its faculty, applied them as binding regulations of the University, and required Plaintiff and his colleagues to comply with them." (*Id.* ¶ 228). Third, Shanahan provided sufficient facts to indicate he started work knowing these requirements existed; Shanahan "accepted these terms by joining and continuing as a member of the Northwestern faculty." (*Id.* ¶ 230).

Shanahan also alleged facts showing a plausible breach of contract on behalf of Northwestern. Shanahan claims a breach of contract took place when Northwestern violated various provisions of the school handbook and guidelines. (*Id.* ¶¶ 233-264). For example, the Chairperson's Handbook expected department members who had "disputatious" relationship with a tenure candidate to recuse themselves from the tenure discussion and vote. (*Id.* ¶ 233). Shanahan invoked this provision before his tenure vote took place, but the Dean's Office denied his request, in violation of the handbook. (*Id.* ¶ 235). Additionally, the Chairperson's Handbook required the chair or designated senior colleague of a department to investigate student complaints about a professor. (*Id.* ¶ 236). Northwestern, according to Shanahan, did not verify the truth of the student complaints it had received regarding Shanahan. (*Id.* ¶ 237). Because the Court presumes all well-plead facts are true, Shanahan has stated a claim for a breach of contract and the Defendants' motion to dismiss Count IV is denied.

## CONCLUSION

The Defendants' Motion to Dismiss [8] is granted in part and denied in part without prejudice. To the extent Plaintiff seeks to file an amended complaint to cure the dismissed claims, he shall do so within 21 days from the date of this order. Failure to comply will result in dismissal with prejudice as to Plaintiff's defamation per se claim.

Virginia M. Kendall
United States District Judge

Date: October 20, 2026